IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTHONY TRUPIA,

     *Plaintiff*,

v.

MAXWELL LEADERSHIP, INC.,

     *Defendant*.

No. 1:26-cv-02362-TRJ

Jury Trial Demanded

**Defendant's Brief in Support of its Motion to Dismiss**

Peter J. Brann (Pro Hac Vice)
David Swetnam-Burland (Pro Hac Vice)
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566
pbrann@brannlaw.com
dsb@brannlaw.com

Edward A. Bedard    926148
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th Street, NW
Atlanta, GA 30318
(678) 701-9381
(404) 856-3255 (fax)
ebedard@robbinsfirm.com

*Attorneys for Defendant*

## Table of Contents

Table of Contents ...................................................................................................i

Introduction ..........................................................................................................1

Background ...........................................................................................................2

Standard of Review ..............................................................................................3

Argument...............................................................................................................4

    I.     Defendant Did Not Violate the TCPA Because the TCPA Does Not
        Apply to Text Messages.........................................................................4

    II.    The Court Should Retain Supplemental Jurisdiction and Dismiss
        Plaintiff's Oklahoma State Law Claims.................................................8

        A.    This Is the Exceptional Case to Exercise Supplemental
               Jurisdiction following Dismissal of Plaintiff's Federal
               Claim.................................................................................8

        B.    Defendant Did Not Violate the OTSA Because the OTSA
               Does Not Apply to Text Messages .........................................11

        C.    Defendant Did Not Commit the Tort of Intrusion upon
               Seclusion by Sending Six Text Messages to Plaintiff ..............14

Conclusion ...........................................................................................................16

Certificate of Compliance ....................................................................................17

Certificate of Service ...........................................................................................18

**Introduction**

Defendant Maxwell Leadership, Inc. (Maxwell Leadership) has filed a motion to dismiss the complaint filed by Plaintiff Anthony Trupia under Fed. R. Civ. P. 12(b)(6). Plaintiff claims that Defendant violated the Telephone Consumer Protection Act (TCPA) by sending him six unsolicited text messages. Following *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), *every* district court in this Circuit that has ruled on the issue has held that the private causes of action under the TCPA do not extend to text messages. This Court should rule likewise.

Although federal courts ordinarily would decline to exercise supplemental jurisdiction once the federal claim is dismissed, this case is the exception that proves the rule. Because Plaintiff also asserts easily dispatched state claims under Oklahoma law, and this case would be remanded to Georgia, not Oklahoma, state court, the federalism concerns relating to supplemental jurisdiction are contracted, and the efficiency advantages of retaining jurisdiction are amplified.

*First,* under the plain language of the Oklahoma statute that was patterned on the TCPA and Plaintiff elsewhere has called a "copycat" statute, it is even more apparent that this state statute applies only to telephone calls and not text messages. *Second*, receiving six unsolicited text messages scarcely constitutes an "intrusion

upon seclusion" that would be "highly offensive to a reasonable person." In short, Plaintiff's complaint should be dismissed in its entirety with prejudice.

## Background

Plaintiff alleges that he has a cell phone number "registered in Oklahoma and used primarily for personal purposes," ECF 1-1 (Complaint) (Compl.) ¶ 1, although the number differs from his personal phone number listed on the summons. *See id*. at 1. Plaintiff does not allege that he registered his cell phone number on the national Do Not Call registry. Plaintiff alleges that he received "at least six unsolicited text messages" from Maxwell Leadership between November 2025 and January 2026. *Id*. ¶ 8. Plaintiff does not allege that he sought to unsubscribe or opt out of receiving text messages, and he does not allege that Maxwell Leadership attempted to call him or speak to him on his cell phone.

Plaintiff alleges that the text messages were addressed specifically to "Sherri," not him. *Id*. ¶ 9. Although beyond the scope of this motion, we note that "Sherri" had consented to receive text messages from Maxwell Leadership before her cell phone number was reassigned to Plaintiff unbeknownst to Maxwell Leadership.

Based on these allegations, Plaintiff sued Maxwell Leadership in Georgia state court for violating the TCPA, for violating the parallel Oklahoma Telephone Solicitation Act (OTSA), and for violating the state law tort of intrusion upon seclusion. Invoking federal question jurisdiction because state and federal courts

2

have concurrent jurisdiction over TCPA cases, Maxwell Leadership removed the case to this Court. *See* 28 U.S.C. §§ 1331, 1441(a); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

## Standard of Review

In a recent decision holding that the TCPA did not apply to text messages, Chief Judge May articulated the well-known standard for evaluating motions to dismiss under Fed. R. Civ. P. 12(b)(6):

> To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))]. A complaint is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556).
>
> At the motion-to-dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff. However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678. Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

*Irvin v. Sonic Indus. Servs., LLC*, 2026 WL 1098403, *1 (N.D. Ga. Apr. 20, 2026) (cleaned up and other citations omitted). Plaintiff's complaint does not—and cannot—satisfy this standard.

## Argument

**I.    Defendant Did Not Violate the TCPA Because the TCPA Does Not Apply to Text Messages.**

Plaintiff alleges that Maxwell Leadership violated the TCPA by sending him six unsolicited text messages. *See* Compl. ¶¶ 8, 16–20. Plaintiff claims that these actions violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States … *to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)* using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

(Emphasis and ellipses added). The threshold question is whether a text message is a "call" under the TCPA. It is not.

The legal landscape concerning the TCPA changed in the wake of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 407 (2024), which overruled *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 840 (1984), with the Court describing *Chevron* as a "fundamentally misguided" doctrine that "demands that courts mechanically afford binding deference to agency interpretations[.]" Applying *Loper Bright*, in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Court then

4

expressly rejected the notion that courts should give deference to Federal

Communications Commission (FCC) rules and interpretation concerning the TCPA.

As Judge Thrash recently explained before concluding that the TCPA did not apply

to text messages:

> In *McLaughlin*, the Supreme Court reiterated *Loper Bright*'s holding that *district courts are not bound by an agency's interpretation of a statute and instead must apply ordinary principles of statutory interpretation* while "affording appropriate respect to the agency's interpretation." *McLaughlin Chiro. Assocs., Inc.*, 606 U.S. at 155. But it further held that the Hobbs Act does not preclude district courts from disagreeing with the FCC's interpretations of the TCPA. *Id.* at 168.

*Radvanksy v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, *2 (N.D. Ga. Feb. 17,

2026) (emphasis added). This amounts to a "sea change" in which district courts

now must look with "fresh eyes" to determine whether text messages are covered by

the TCPA. *Id*. at *3.

Not to bury the lede, *every* district court in this Circuit following *McLaughlin*

that has evaluated whether the private causes of action under the TCPA for an

allegedly improper "call" under Section 227(b) or an allegedly improper "telephone

call" under Section 227(c) include text messages has concluded that they are not

covered by the statute. *See Irvin v. Sonic Indus. Servs., LLC*, 2026 WL 1098403

(N.D. Ga. Apr. 20, 2026); *Radvanksy v. 1-800-Flowers.com, Inc.*, 2026 WL 456919

(N.D. Ga. Feb. 17, 2026) (*1-800-Flowers*); *Radvanksy v. Hendo Holdings, Inc.*, 2026

WL 810929 (N.D. Ga. Feb. 12, 2026) (*Hendo*); *accord James v. Smarter Contact,*

5

*Inc.*, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026); *Lopresti v. Nouveau Essentials Marketing LLC*, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026) (R&R); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025). Following the path blazed by these courts, we reach the same destination.

"The Court begins its analysis with the 'plain language of the provision to be interpreted.'" *Irvin*, 2026 WL 1098403 at *1 (quoting *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008)). "If the Court finds the text to be clear, the analysis ends there too." *Irvin*, 2026 WL 1098403 at *1 (citing *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 819 (11th Cir. 2020)).

"When determining a statute's meaning, courts 'seek to afford the law's terms their ordinary meaning at the time Congress adopted them.'" *James*, 2026 WL 879244, at *3 (cleaned up and quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021)) (other citation omitted); *see also Davis*, 797 F. Supp. 3d at 1272 ("Courts must interpret every statute 'in accord with the ordinary public meaning of its terms at the time of its enactment.'") (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020)). Plaintiff's attempt to apply a 1991 statute to the 21st century world of text messages "runs afoul of the Supreme Court's instruction in *Loper Bright* that a statute's meaning is 'fixed at the time of enactment.'" *Irvin*, 2026 WL 1098403 at *3 (quoting *Loper Bright*, 603 U.S. at 400).

6

Applying this standard, the result is foreordained:

> It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA. In fact, the first text message was not sent until December 3, 1992, almost a full year *after* the December 20, 1991, enactment of the TCPA.

*Keating v. Peterson's Nelnet, LLC*, 625 F. App'x 365, 371 (6th Cir. 2015) (citation omitted and emphasis in original). Similarly, other courts have reviewed in detail dictionary definitions of "telephone call" and "call" at the time the TCPA was passed and concluded it "did not include or embrace a modern text message." *James*, 2026 WL 879244, at *3–4 (collecting authorities). The upshot is that no one thought when the TCPA was passed that it included as-yet uninvented text messages:

> *No normal person refers to a text message, or thinks of a text message, as a "call."* No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner. Certainly, no ordinary person would think of a text message as a "telephone call." *This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.*

*Davis*, 797 F. Supp. 3d at 1273 (emphasis altered and citation omitted); *accord Irvin*, 2026 WL 1098403 at *3 (collecting cases).

Although Congress amended a different section of the TCPA in 1999 to refer to "text messages," *see* 47 U.S.C. §§ 227(e)(8)(A)–(B), that undermines, not undergirds, the conclusion that the private causes of action for unauthorized "calls" or "telephone calls" in Sections 227(b) and 227(c) includes text messages. "[W]hen

7

Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Sayed*, 2025 WL 2997759, at *2 (quoting *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025), and citing *Pulsifer v. United States*, 601 U.S. 124, 149 (2024)); *accord James*, 2026 WL 879244, at *4; *1-800-Flowers*, 2026 WL 456919, at *4. That makes all the difference.

Congress could not, and did not, envision text messages when it passed the TCPA in 1991, and when it amended the TCPA in 1999 to include text messages in Section 227(e) of the TCPA, it did not expand the private rights of action in Sections 227(b) and 227(c) to include text messages. Applying the plain language of the TCPA and the teachings of *Loper Bright* and *McLaughlin*, that is the end of the line—the TCPA does not authorize a private right of action concerning text messages.

## II.   The Court Should Retain Supplemental Jurisdiction and Dismiss Plaintiff's Oklahoma State Law Claims.

### A.   This Is the Exceptional Case to Exercise Supplemental Jurisdiction following Dismissal of Plaintiff's Federal Claim.

Once this Court dismisses Plaintiff's federal claim under the TCPA, the issue is whether the Court should continue to exercise supplemental jurisdiction over Plaintiff's Oklahoma state law claims under 28 U.S.C. § 1367(c). Because Plaintiff's state law claims would be remanded to Georgia, not Oklahoma, state court, and

because Plaintiff's principal state law claim is based on an Oklahoma statute patterned on the TCPA, it would not undermine federalism to take the most efficient path forward by continuing to exercise supplemental jurisdiction.

This Court has "broad" discretion whether to exercise supplemental jurisdiction over Plaintiff's state law claims. *Silas v. Sheriff of Broward Cty., Fla.*, 55 F.4th 863, 866 (11th Cir. 2022). "That discretion is 'expressly conferred to district courts by statute.'" *Id.* (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999), and citing 28 U.S.C. § 1367(c)).

There is no question the Court *could* exercise supplemental jurisdiction in this case. The real question is whether the Court *should* exercise such supplemental jurisdiction.

We recognize that the usual approach is to dismiss (or remand) any remaining state law claims after the federal claims have been dismissed based on federalism concerns:

> *Although the district court has discretion, concerns of federalism— namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed.* "We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

*Silas*, 55 F.4th at 866 (emphasis added). "The Supreme Court has also put a thumb on the scale: '[I]n the usual case in which all federal-law claims are eliminated before

9

trial, the balance of factors ... will point toward declining to exercise [pendent] jurisdiction ....'" *Id.* (ellipses and brackets added by Court and quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This, however, is not the usual case.

Plaintiff filed his complaint in Georgia state court, asserting both a federal claim and Oklahoma state law claims. Thus, if the Court declines supplemental jurisdiction, the Oklahoma state law claims will be decided by a Georgia, not Oklahoma, state court. This is not a case of a Georgia federal court intruding on "the state-court adjudication of state-law issues." *Silas*, 55 F.4th at 866 (citing *Raney*, 370 F.3d at 1089). If Plaintiff's Oklahoma state law claims are going to be decided by a Georgia court either way, it makes sense for a federal court with more resources and experience interpreting faraway state law to do so. *Cf.* 28 U.S.C. § 1332 (diversity jurisdiction).

The other reason for this Court to retain supplemental jurisdiction is that Plaintiff's principal Oklahoma state law claim is based on a parallel state statute that was patterned on the TCPA. Having spent the time and effort to delve into the TCPA, it would be more efficient for this Court to apply that understanding to resolve Plaintiff's state law claims concerning the Oklahoma Telephone Solicitation Act than for a Georgia state court to start from scratch. We encourage the Court to

exercise its broad discretion to retain supplemental jurisdiction over Plaintiff's Oklahoma state law claims.

**B.     Defendant Did Not Violate the OTSA Because the OTSA Does Not Apply to Text Messages.**

Plaintiff alleges that Defendant violated the Oklahoma Telephone Solicitation Act (OTSA) by sending him six text messages. *See* Compl. ¶¶ 8, 21–26 (citing Okla. Stat. tit. 15, § 775C3). Like the TCPA, the threshold question is whether the OTSA applies to text messages. Applying the plain language of the statute, which is echoed in its legislative history, the answer is "no."

In 2022, Oklahoma joined several other states and passed what have been dubbed "mini-TCPA" statutes. *See also* Compl. ¶ 26 ("The OTSA is modeled after the federal TCPA"). In his YouTube video entitled, *How I Made $100,000 in One Year Suing Spam Callers, and You Could Too!*, available at https://www.youtube.com/watch?v=FfoNM9CHupY, Plaintiff referred to these state mini-TCPA statutes as "copycat bills" at minutes 9:05, 9:22, and 10:55. Plaintiff scarcely can object to applying lessons learned in interpreting the TCPA to the OTSA.

Our research has not uncovered any cases in state or federal court interpreting any provision of the OTSA. *See* Okla. Stat. tit. 15, § 775C. Nevertheless, the language of the OTSA is sufficiently crystalline to conclude that the statute does not apply to text messages.

11

Each violation of the prior express written consent requirement of the OTSA

asserted by Plaintiff requires a "commercial telephonic sales call":

> A person may not make or knowingly allow a *commercial telephonic sales call* to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.
>
> It shall be unlawful for any person who makes a *commercial telephonic sales call* or causes a commercial telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number…
>
> It shall be unlawful for any person who makes a *commercial telephonic sales call* or causes a commercial telephonic sales call to be made to intentionally alter the voice of the caller in an attempt to disguise or conceal the identity of the caller…

*Id*. § 775C.3 (emphasis and ellipses added).

Similarly, the provision entitled "Unlawful Phone Calls" requires either or

both a "phone call" and a "commercial telephone solicitation phone call":

> A commercial telephone seller or salesperson may not make any of the *following types of phone calls*, including calls made through automated dialing or recorded messages…
>
> A commercial telephone seller or salesperson making a *commercial telephone solicitation call* may not…

*Id*. § 775C.4 (emphasis and ellipses added).

A person entitled to bring a private action under the OTSA is limited to "[a]

*called party* who is aggrieved by a violation of this act." *Id*. § 775C.6 (emphasis

added). If that language was not sufficient, the definition of a "called party" under

the OTSA "means a person who is the regular user of the telephone number that receives a *commercial telephonic sales call*." *Id*. § 775C.2(1) (emphasis added).

The repeated references to calls, phone calls, commercial telephone solicitation phone calls, and commercial telephonic sales calls all lead to the conclusion that the Oklahoma *Telephone* Solicitation Act is concerned exclusively with unwanted telephone calls, not text messages.

The legislative history from the sponsor of the OTSA confirms what should be apparent from the language of the statute:

> Oklahomans could be getting *fewer irritating solicitation calls* thanks to legislation unanimously approved Tuesday by the Senate. House Bill 3168, by Sen. Bill Coleman, R-Ponca City, creates the Telephone Solicitation Act of 2022, which would prohibit numerous types of marketing calls and set strict parameters on when others can be made.
>
> "There is nothing more annoying than *getting constant calls from solicitors*, from your car warranty expiring to something questionable on your credit report. This list goes on and on, and the *calls are endless*," Coleman said. "*This act will limit robocalls and sketchy sales calls, giving citizens some peace*. This is a consumer reform that has been desperately needed for some time to get control over this frustrating industry that is continually finding new ways to get around the federal Do Not Call list."

Oklahoma Senate, *Senate votes to hang up on annoying solicitation calls; sends bill to governor* (Apr. 26, 2022) (emphasis added), available at https://oksenate.gov/press-releases/senate-votes-hang-annoying-solicitation-calls-sends-bill-governor. Because the OTSA concerns phone calls and not text messages,

13

Plaintiff's claim about six unsolicited text messages does not state a cognizable claim under Oklahoma law.

### C.    Defendant Did Not Commit the Tort of Intrusion upon Seclusion by Sending Six Text Messages to Plaintiff.

Plaintiff's final arrow in his quiver is that Defendant committed the tort of intrusion upon seclusion by sending him six unsolicited text messages because such conduct would be highly offensive to a reasonable person. *See* Compl. ¶¶ 8, 27–28. To describe this claim is to refute it.

Although the complaint does not specify a source for this claim, we assume that Plaintiff is asserting a claim under Oklahoma law. *Cf. Assoc. Servs., Inc. v. Smith*, 249 Ga. App. 629, 632, 549 S.E.2d 454, 459 (2001) (under Georgia law, Plaintiff must also show a "physical intrusion analogous to a trespass") (citations omitted). Oklahoma applies the standard set forth in the Restatement (Second) of Torts § 625B (1977) to determine if a defendant has committed the tort of intrusion upon seclusion:

> One who intentionally intrudes, physically or otherwise, upon the solicitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Guilbeau v. Durant H.M.A., LLC*, 533 P.3d 764, 771 (Okla. 2023) (quoting Restatement).

14

As the facts of *Guilbeau* demonstrate, the intrusion must be "highly offensive to a reasonable person." After the plaintiff in that case had a miscarriage, the hospital presented her "with photographs of her deceased child," which she said showed the "child's body in various poses and with props (*e.g.* angel wings)," where "[t]he child's limbs and mouth had allegedly been manipulated, for the apparent purpose (in the words of the petition) of making the child 'look alive and well.'" *Id*. at 765. That is not this case.

Plaintiff does not allege that the six unsolicited text messages themselves were offensive, much less highly offensive. Plaintiff does not allege that he made any attempt to unsubscribe or opt out of receiving the text messages. Plaintiff does not allege that the text messages were even addressed to him, and indeed, he alleges that they were addressed to "Sherri," so he received them by mistake. *See* Compl. ¶ 9.

Receiving a handful of anodyne, mistaken, texts does not create a tort of intrusion upon seclusion under either common sense or the Restatement:

> And a single unwanted, illegal text message is not [highly offensive to a reasonable person]. Calling someone two or three times, for example, is insufficiently offensive to state a claim under the common-law tort; "*only when the telephone calls are repeated with such persistency and frequency as to amount to a course of hounding the plaintiff*" does the intrusion rise to the degree of offensiveness that the common law requires.

15

*Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (brackets and emphasis added and quoting Restatement (Second) of Torts § 625B cmt. d (1977)). Once again, Plaintiff's claim fails as a matter of law.

### Conclusion

Defendant Maxwell Leadership, Inc. respectfully requests that the Court grant its motion and dismiss Plaintiff Anthony Trupia's claims with prejudice.

Dated: June 2, 2026

/s/ Peter J. Brann
Peter J. Brann (Pro Hac Vice)
David Swetnam-Burland (Pro Hac Vice)
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566
pbrann@brannlaw.com
dsb@brannlaw.com

/s/ Edward A. Bedard
Edward A. Bedard       926148
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th Street, NW
Atlanta, GA 30318
(678) 701-9381
(404) 856-3255 (fax)
ebedard@robbinsfirm.com

*Attorneys for Defendant*

16

## **Local Rule 7.1(D) Certification**

I certify that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 14-pt Times New Roman font and type.

/s/ Peter J. Brann
Peter J. Brann

## Certificate of Service

I certify that, on June 2, 2026, I electronically filed this document and any attachments using the Court's CM/ECF system, which will send notification to all counsel of record. I further certify that I served a copy with all attachments on *pro se* Plaintiff Anthony Trupia by email and U.S. mail, postage prepaid, addressed as follows:

Anthony Trupia
605 SE 21st St.
Oklahoma City OK 73129
trupiaar@gmail.com

/s/ Peter J. Brann
Peter J. Brann

18