IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTHONY TRUPIA,

     *Plaintiff,*

v.

MAXWELL LEADERSHIP, INC.,

     *Defendant.*

No. 1:26-cv-02362-TRJ

Jury Trial Demanded

## Defendant's Brief in Opposition to Plaintiff's Motions for Sanctions

Peter J. Brann (Pro Hac Vice)
David Swetnam-Burland (Pro Hac Vice)
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566
pbrann@brannlaw.com
dsb@brannlaw.com

Edward A. Bedard    926148
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th Street, NW
Atlanta, GA 30318
(678) 701-9381
(404) 856-3255 (fax)
ebedard@robbinsfirm.com

*Attorneys for Defendant*
*Maxwell Leadership, Inc.*

# Table of Contents

Table of Contents ................................................................................ i

Introduction........................................................................................1

Background .........................................................................................3

Argument............................................................................................4

    I.     Plaintiff's Motions Are Procedurally Improper and Not
          Excused by His *Pro Se* Status .........................................................4

    II.    Plaintiff's Rule 11 Sanctions Motion Should Be Denied for
          Failure to Comply with the Safe-Harbor Provision .......................8

    III.   Plaintiff's 1927 Sanctions Motion Should Be Denied Because
          Plaintiff Cannot Satisfy Any of the Three Requirements of
          Section 1927 .................................................................................. 11

    IV.   Maxwell Leadership Did Not Misstate the Law or Facts
          in its Pleadings............................................................................. 14

Conclusion ........................................................................................ 25

Certificate of Compliance ................................................................ 27

Certificate of Service........................................................................ 28

### Introduction

Plaintiff Anthony Trupia, proceeding *pro se*, has filed a 49-page motion for sanctions against counsel for Defendant Maxwell Leadership, Inc. under Fed. R. Civ. P. 11, ECF 19 (Rule 11 Motion), and a 49-page motion for sanctions against counsel for Maxwell Leadership under 28 U.S.C. § 1927, ECF 18 (1927 Motion). Maxwell Leadership opposes both motions on multiple grounds.

*First*, these motions are procedurally improper on numerous grounds. They far exceed the page limits for motions in this district, and Plaintiff neither sought nor received permission to file motions that are nearly twice as long as permitted in this district. They also are transparent attempts to file late responses to Maxwell Leadership's motion to dismiss the original complaint and its opposition to Plaintiff's motion to amend the complaint, or, in the alternative, its motion to dismiss the First Amended Complaint (FAC). Finally, in this regard, while the motions may appear to have the earmarks of AI assistance, Plaintiff did not file an acknowledgement of such assistance as required by this Court's standing order. Moreover, Plaintiff's failure to comply with this Court's rules cannot be excused by his *pro se* status.

*Second*, Plaintiff's Rule 11 Motion fails at the threshold because Plaintiff filed the motion only *two* days after informing counsel that he would seek sanctions under Rule 11, thus violating Rule 11(c)(2)'s mandatory 21-day safe-harbor provision. Although the Court thus should never reach the merits of

Plaintiff's Rule 11 Motion, Plaintiff's mere disagreement with Maxwell Leadership's statement of the relevant law does not—and could never—satisfy the high, objective standard of Rule 11.

*Third*, Plaintiff's 1927 Motion fails to satisfy any of the three requirements of a Section 1927 motion, namely, (1) "unreasonable and vexatious" conduct, (2) that "multiplies the proceedings," (3) and causes Plaintiff to incur "costs, expenses, and attorneys' fees." Filing legitimate motions to dismiss and opposing Plaintiff's attempt to expand vastly the scope of this litigation through a 61-page amended complaint is the converse of the evils of Section 1927.

*Fourth*, although Plaintiff takes umbrage at virtually every word in Maxwell Leadership's unopposed pleadings, his assertion now that counsel misstated the law is, in a word, wrong. His two central arguments attack Maxwell Leadership's description of the current state of the law in this Circuit whether text messages are covered by the Telephone Consumer Protection Act (TCPA), and whether sending six unwanted text messages constitutes the tort of intrusion on seclusion. But undersigned counsel continue to maintain that our reading of the law is correct: interpreting the plain text of the TCPA post-*Loper Bright*, text messages are not "calls" and six text messages does not satisfy this common law tort. Regardless, the key point is that even strong disagreement over the law is not a basis for seeking sanctions.

2

## Background

On January 21, 2026, Plaintiff filed his original complaint in state court, ECF 1-1, which, after being served, Maxwell Leadership removed to this Court. ECF 1. On May 8, 2026, Plaintiff filed a motion to file a First Amended Complaint, ECF 11, which has never been served on the proposed additional defendants. Following an extension of time, seeking to cut to the chase, on June 2, 2026, Maxwell Leadership filed a motion to dismiss Plaintiff's original complaint, ECF 15 (Motion to Dismiss), and filed an opposition to Plaintiff's motion to amend, or in the alternative, in support of its motion to dismiss the First Amended Complaint, ECF 16 (Maxwell Opp.).

Plaintiff never responded to Maxwell Leadership's motion to dismiss the complaint. Plaintiff also never filed any reply or response to Maxwell Leadership's opposition to the motion to amend or its alternative motion to dismiss the First Amended Complaint. Instead, nearly seven weeks later, on July 23, 2026, Plaintiff filed a motion to "treat" the FAC as the operative complaint in this matter, ECF 17, which will be addressed separately, and Plaintiff filed two motions for sanctions against Maxwell Leadership's counsel, ECF 18–19, to which we now turn.

## Argument

### I.    Plaintiff's Motions Are Procedurally Improper and Not Excused by His *Pro Se* Status.

Plaintiff's sanctions motions are procedurally improper on numerous grounds.

*First*, both motions substantially exceed the page limits under L.R. 7.1(D), which provides in relevant part: "Absent prior permission of the Court, briefs filed in support of a motion or in response to a motion are limited in length to twenty-five (25) pages." Thus, Plaintiff's motions are about twice as long as permitted under these rules. And, under this Court's standing order, "Parties seeking an extension of the page limit must do so at least five (5) days in advance of their filing deadline and should explain with specificity the reasons necessitating the extension." Judge Johnson Standing Order § 3(C). Plaintiff did not ever seek such court permission, much less specify any reason for exceeding the page limit.

The consequence for failing to abide by these limits is unequivocal: "[t]he Court will … not consider any arguments made in pages which exceed the Local Rules' requirements." *Id.* (ellipsis added); *see also* L.R. 7.1(F) ("The Court, in its discretion, may decline to consider any motion or brief that fails to conform to the requirements of these rules."). Because the Court will not consider any arguments beyond the 25-page limit, we will not address them.

4

*Second*, Plaintiff's sanctions motions are, in reality, untimely responses to Maxwell Leadership's motion to dismiss the original complaint, ECF 15, and Maxwell Leadership's opposition to his motion for leave to file an amended complaint, or, in the alternative, its motion to dismiss the First Amended Complaint, ECF 16. Every argument on every page in both sanctions motions is directed at these unopposed motions, which could have and should have been raised earlier.

Maxwell Leadership timely filed its motion to dismiss the original complaint and its opposition and motion-in-the-alternative to the motion to file the FAC on June 2, 2026. ECF 15, 16. The deadline to file a reply brief or a response in opposition was June 16, 2026. *See* L.R. 7.1(B) (14-day deadline for responses and replies). Plaintiff never filed one. Plaintiff had the opportunity to make the arguments he made in his sanctions motions and he failed to do so.

Plaintiff's briefing about the substance of Maxwell Leadership's motions to dismiss should not now be considered by the Court, two months after they were due. In cases in which *pro se* plaintiffs do not respond to motions to dismiss—like Plaintiff failed to do here—"the failure to respond to an opposing party's argument constitutes abandonment of that claim and warrants its dismissal." *Boyd v. Wellstar Health Sys., Inc.*, 2025 WL 4696588, *1 n.2 (N.D. Ga. May 2, 2025) (R&R) (cleaned up and citations omitted; collecting cases).

*Third*, this Court's standing order requires that: "All counsel and pro se parties must disclose the use of artificial intelligence (AI) in any capacity to prepare documents submitted to the Court." Judge Johnson Standing Order § 3(A). For the record, Maxwell Leadership's lead counsel, Peter Brann, personally researched and drafted the relevant pleadings without any use of AI and takes responsibility for all the challenged Maxwell Leadership's pleadings filed in this case. The record, however, is not equally clear-cut concerning Plaintiff's use or nonuse of AI.

Plaintiff has not admitted—or denied—that he used AI "in any capacity" to draft his nearly 100 pages of sanctions motions, but a *pro se* party's discussion of dozens of cases that may appear superficially appealing at first blush, but is incorrect upon closer examination, has the earmarks of AI assistance. If true, not only would such unacknowledged AI assistance violate this Court's standing order, but it would also assist Plaintiff in leveraging his *pro se* status to extract a nuisance settlement on meritless claims.

In fact, Plaintiff argues that his *pro se* status should excuse him from his failure to comply with the rules that govern litigation in this Court. Not so.

"When a litigant chooses to proceed *pro se,* her pleading is 'held to less stringent standards than formal pleadings drafted by lawyers' and must be 'liberally construed.'" *Crawford v. Amazon HGA6,* 2026 WL 916703, *1 (N.D. Ga. Mar. 31, 2026) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)) (other

6

citation omitted). "But even a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure." *Crawford,* 2026 WL 916703, at *1 (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)). "The leniency the Court must apply does not permit it to rewrite an otherwise deficient pleading by a *pro se* litigant in order to sustain an action." *Crawford,* 2026 WL 916703, at *1 (cleaned up and citation omitted).

Because *pro se* plaintiffs frequently equate defendants' disagreement with their factual and legal arguments with sanctionable conduct, they frequently file sanctions motions. Equally frequently, courts in this district summarily dismiss such motions. *See, e.g., Bussey v. Williams*, 2026 WL 915681, *8 (N.D. Ga. Mar. 12, 2026); *Johnson v. Insight Global, LLC*, 2025 WL 4725455 (N.D. Ga. Apr. 23, 2025); *Dudar v. State Farm Fire & Casualty Co.*, 2023 WL 5668033, *4–5 (N.D. Ga. Aug. 16, 2023).

Finally in this regard, Plaintiff's sanctions motions are taken from a page of his publicly announced playbook for *pro se* plaintiffs in these types of cases. Although Plaintiff complains about Maxwell Leadership's citation to his YouTube video entitled *How I Made $100,000 in One Year Suing Spam Callers, and You Could Too!*, available at https://www.youtube.com/watch?v=FfoNM9CHupY, he does not dispute its authenticity or accuracy. In his promotional video, Plaintiff explains in detail his strategy of aggressively litigating these cases (15:31), refusing to settle any

case for less than $15,000 (16:11), extracting nuisance value settlements (18:22), leveraging defense costs (19:14), and filing numerous motions to drive up defense costs (22:06). Plaintiff summarizes his approach as follows:

> You will find yourself in the most unbalanced position you could ask for in a situation like this, and the situation will finally be unbalanced in your favor. *Every motion you write and document you send will burn through attorney money while it costs you nothing but time and effort to stick with it and stay in court. You don't even have to win a case. You just have to be able to hang in the court process as these idiot companies burn their money away*.

*Id.* at 29:24 (emphasis added).

Plaintiff, by his own assertion, is not the typical *pro se* plaintiff. He knows the rules and is exploiting them for his own litigious and financial benefit. Live by the sword, die by the sword. Plaintiff's *pro se* status does not excuse his failure to comply with the rules.

## II.   Plaintiff's Rule 11 Sanctions Motion Should Be Denied for Failure to Comply with the Safe-Harbor Provision.

Plaintiff contends that Maxwell Leadership's counsel is subject to sanctions under Fed. R. Civ. P. 11 based on the standards set forth in *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001). *See* Rule 11 Motion 7. Although Plaintiff seeks his "costs" as a sanction, *see* Rule 11 Motion 47, *Massengale* holds that a *pro se* litigant may not be awarded attorneys' fees as sanctions under Rule 11. *See Massengale*, 267 F.3d at 1302–1303.

In any event, Plaintiff cannot satisfy the high standard to recover sanctions under Rule 11:

> Rule 11 sanctions are properly assessed "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose."

*Massengale*, 267 F.3d at 1301 (quoting *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996)). Plaintiff cannot clear this high bar.

Although we contend that the Rule 11 Motion is procedurally barred, we feel compelled to note that even a cursory examination of the motion reveals that it is bootless. Plaintiff bristles at the factual inferences drawn by Maxwell Leadership, but he does not identify anything "that has *no* reasonable factual basis." *Id.* (emphasis added). Plaintiff contests Maxwell Leadership's legal arguments that the TCPA does not create a private cause of action for text messages, and that receiving six text messages does not constitute an intrusion upon seclusion that would be highly offensive to a reasonable person, but Plaintiff cannot seriously contend that these legal theories have "*no* reasonable chance of success." *Id.* (emphasis added). Finally, filing motions to dismiss that asks the Court to decide this case on the merits scarcely can be characterized as filings "in bad faith for an improper purpose." *Id.*

9

The Court, however, need not reach the merits—and lack thereof—of Plaintiff's Rule 11 Motion. "This motion is not properly before the Court because Plaintiff did not comply with the procedural requirements of Rule 11." *Dudar*, 2023 WL 5668033, at *4. Specifically, "[t]his rule requires a party seeking sanctions to serve a copy of the motion on the opposing party 21 days before filing a motion with the Court." *Id.* (citing Fed. R. Civ. P. 11(c)(2)). "Plaintiff was bound to follow this procedure despite the fact that he is proceeding *pro se.*" *Dudar*, 2023 WL 5668033, at *4 (citing *Moon*, 863 F.2d at 837).

Plaintiff did not comply with this 21-day safe-harbor provision. Plaintiff states that he served the Rule 11 Motion on July 21, 2026. *See* Rule 11 Motion 1, 49. But Plaintiff filed his Rule 11 Motion (also dated July 21, 2026) with the Court the same day, and it was docketed by the Court *two days later*, on July 23, 2026.

"Because Plaintiff failed to follow the procedure outlined in Rule 11, his [sanctions] motions … are improper and subject to denial." *Bussey*, 2026 WL 915681, at *7 (brackets and ellipsis added). Thus, the Court could deny the Rule 11 Motion without further ado on procedural grounds. *Cf. Dudar*, 2023 WL 5668033, at *4 (denying motion on procedural grounds while also concluding that the motion was "substantively flawed"); *Bussey*, 2026 WL

10

915681, at *7 (same). Either because the Rule 11 Motion is procedurally flawed or baseless, or both, the Court should deny it.

### III. Plaintiff's 1927 Sanctions Motion Should Be Denied Because Plaintiff Cannot Satisfy Any of the Three Requirements of Section 1927.

Plaintiff seeks sanctions against Maxwell Leadership's counsel under 28 U.S.C. § 1927. "Section 1927 permits sanctions against an attorney who 'multiplies the proceedings in any case unreasonably and vexatiously' requiring payment of excess costs caused by such conduct." *Weissman v. Cheokos*, 2026 WL 1759431, *6 (11th Cir. June 18, 2026) (quoting statute).

> Sanctions require (1) "unreasonable and vexatious" conduct, (2) that multiplies proceedings, and (3) a causal financial nexus to the excess proceedings, covering only costs reasonably incurred as a result of the attorney's misconduct.

*Weissman*, 2026 WL 1759431, at *6 (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010)). Plaintiff cannot satisfy *any* of these three requirements, but most notably cannot meet the requirement that the alleged improper conduct "multiplied" the proceedings.

We should not lose sight of the fact that the challenged pleadings filed by Maxwell Leadership sought *dismissal* of this litigation. Seeking dismissal of a lawsuit is the antithesis of multiplying proceedings. Indeed, Maxwell Leadership's approach throughout has been to pursue the most efficient path

11

to the merits, whether by seeking dismissal of the lawsuit, *see* Motion to Dismiss 4–16, by noting the futility of Plaintiff's proposed amended complaint, *see* Maxwell Opp. 7–8, or by consolidating its opposition to Plaintiff's sanctions motions in this single brief. If anything sought to multiply these proceedings, it would be the nearly 100 pages of Plaintiff's sanctions motions and Plaintiff's motion to "treat" his proposed 61-page First Amended Complaint as the operative complaint in this matter. Because, by definition, Maxwell Leadership's counsel sought to short-circuit, not multiply, these proceedings, Plaintiff's 1927 Motion fails at the threshold.

If more were needed, and we doubt that it is, Plaintiff cannot satisfy the other requirements of Section 1927. "The plain statutory language of section 1927 makes clear that this section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003) (citing *Peterson,* 124 F.3d at 1396) (both cited in 1927 Motion 8).

"For a sanctions award to be appropriate, 'something more than a lack of merit is required.'" *Imura v. Delta Airlines, Inc.,* 2026 WL 1450380, *5 (N.D. Ga. Apr. 23, 2026) (R&R) (quoting *Lacayo v. Puerto de Palmas Condominium Ass'n, Inc.,* 842 F. App'x 378, 382 (11th Cir. 2021); *Schwartz,* 341 F.3d at 1225). "Indeed, the Eleventh Circuit has 'consistently held that an attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute

only when the attorney's conduct is so egregious that it is tantamount to bad faith.'" *Imura*, 2026 WL 1450380, at *5 (cleaned up and quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)); *see also Weissman*, 2026 WL 1759431, at *6 ("The statute targets bad faith or reckless conduct, not mere negligence.") (citing *Amlong & Amlong*, 500 F.3d at 1239–41); *Stephens v. Swift Transportation Co. of Arizona*, 2026 WL 1702548, *1 (11th Cir. Apr. 24, 2026) ("sanctions are only appropriate if an attorney 'willfully abuses the judicial process by conduct tantamount to bad faith'") (cleaned up and quoting *Schwartz,* 341 F.3d at 1225).

In other words, even if Plaintiff was correct that Maxwell Leadership's motions to dismiss and opposition brief lack merit—which he is not—and even if Maxwell Leadership's counsel misread the relevant law— which they did not—that is not conduct "tantamount to bad faith." Maxwell Leadership's counsel did not engage in "unreasonable *and* vexatious conduct," both of which are required to impose sanctions under Section 1927. *Schwartz,* 341 F.3d at 1225 (emphasis in original).

Plaintiff also cannot meet the final requirement of Section 1927 to impose sanctions, namely, that the "costs, expenses, and attorneys' fees reasonably incurred" resulted from the attorney's alleged misconduct. 28 U.S.C. § 1927. This requirement limits the recovery to "the excess costs that

13

the attorney's multiplication of proceedings has added to the cost of the litigation." *Amlong & Amlong*, 500 F.3d at 1242 (citations omitted). Thus, sanctions under Section 1927 "must bear a financial nexus to the excess proceedings." *Peterson*, 124 F.3d at 1396.

We question whether a *pro se* plaintiff can recover the sanctions allowed under Section 1927 considering the Eleventh Circuit's refusal to allow a *pro se* plaintiff to recover attorneys' fees under Rule 11 discussed above. *See Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001). Even if such sanctions are theoretically recoverable by a *pro se* plaintiff, Plaintiff here did not incur any additional costs, expenses, or attorneys' fees. He had the opportunity to file responses to Maxwell Leadership's pleadings and to challenge what he claims were the alleged mistakes and misreading of the law, but he chose not to do so.

In sum, even before addressing Plaintiff's erroneous assertions that Maxwell Leadership misstated the law in its pleadings, Plaintiff cannot satisfy any of the three requirements to impose sanctions under Section 1927.

## IV.  Maxwell Leadership Did Not Misstate the Law or Facts in its Pleadings.

Plaintiff repeatedly argues that Maxwell Leadership misstated the law in its pleadings. Plaintiff is wrong. Although Plaintiff makes the same arguments in both sanctions' motions, because the Rule 11 Motion is

14

procedurally barred, we address *seriatim* Plaintiff's arguments in his 1927 Motion through page 25.

**The TCPA Does Not Apply to Text Messages.** Plaintiff's principal argument is that Maxwell Leadership erroneously stated that "[f]ollowing *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), *every* district court in this Circuit that has ruled on the issue has held that the private causes of action under the TCPA do not extend to text messages." Motion to Dismiss 1 (emphasis in original) (cited in 1927 Motion 11). As the six cited decisions establish, that statement is, in fact, true.

Plaintiff claims that Maxwell Leadership misled the Court because Maxwell Leadership did not disclose that all the cited cases concerned a different section of the TCPA. *See* 1927 Motion 11–13. This assertion is wrong on multiple levels. *First*, even the portion of the Motion to Dismiss quoted by Plaintiff belies the assertion that Maxwell Leadership tried to hide the ball:

> Not to bury the lede, *every* district court in this Circuit following *McLaughlin* that has evaluated whether the private causes of action under the TCPA for an allegedly improper "call" under Section 227(b) or an allegedly improper "telephone call" under Section 227(c) include text messages has concluded that they are not covered by the statute.

Motion to Dismiss 5 (emphasis in original) (quoted in 1927 Motion 11). Our argument was, and is, that private causes of action under the TCPA under both sections do not reach text messages following *McLaughlin*.

15

*Second*, Plaintiff has misread the cited cases because *Lopresti v. Nouveau Essentials Marketing LLC*, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026) (R&R), considered and rejected the notion that text messages are covered by either Section 227(b) or Section 227(c). Indeed, the *Lopresti* court described Section 227(c) as the "*more broadly titled* 'Protection of subscriber privacy rights.'" 2026 WL 964758, at \*2 (emphasis added). If anything, Section 227(c) is the broader statute. The *Lopresti* court did not find *any* distinction between the two provisions in concluding neither section applied to text messages.

*Third*, Plaintiff does not explain why there is any meaningful distinction between a "call" in Section 227(b) and a "telephone call" in Section 227(c). On the contrary, the cited cases use the terms interchangeably. *See, e.g., Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (praising defendant's argument that "[n]o normal person refers to a text message, or thinks of a text message, as a 'call,'" as "cogent[]," and holding that a text message is not a "telephone call" under Section 227(c)) (quoted in Motion to Dismiss 7).

**Cases Decided Before *McLaughlin* Do Not Control.** Plaintiff repeatedly argues that Maxwell Leadership misstated the law by failing to cite cases that pre-date *McLaughlin* stating that text messages are covered by the TCPA. *See* 1927 Motion 13–15. Almost every case cited in the Motion to Dismiss went to great lengths to distinguish prior Supreme Court and

16

Eleventh Circuit cases as either dicta or no longer good law following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 407 (2024).

Plaintiff's contrary authorities do not stand the test of time. Although the Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), observed that it was "undisputed" there that a text message qualifies as a call, the Court subsequently indicated that this was not a substantive decision on the meaning of "call," just an assumption for the purposes of the case since neither party contested the issue. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021) (citing *Campbell-Ewald* and stating that because "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages," the Court would "therefore assume that it does without considering or resolving that issue"); *cf.* 1927 Motion 16 (conceding *Campbell-Ewald* was not a holding). Following the "sea change" in the law, courts in this Circuit have considered text messages with "fresh eyes" and concluded otherwise. *See Radvanksy v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, *3 (N.D. Ga. Feb. 17, 2026) (quoted in Motion to Dismiss 5).

**Out-of-Circuit Cases Do Not Control.** Plaintiff argues that Maxwell Leadership misled the Court by failing to acknowledge contrary out-of-circuit decisions. *See* 1927 Motion 17–18. As some of the cases Maxwell Leadership cited in the Motion to Dismiss stated, some courts in other circuits have concluded that text messages are included in the TCPA private causes of

17

actions. *See, e.g., 1-800-Flowers.com,* 2026 WL 456919, at \*3 (citing cases). That means, of course, that these cases were disclosed to the Court.

But these out-of-circuit case do not detract from Maxwell Leadership's central argument that post-*Loper Bright* courts in the Eleventh Circuit have concluded that text messages are neither a "call" under Section 227(b) nor a "telephone call" under Section 227(c). As several of these cited cases noted, this conclusion is reinforced by the fact that Congress did add text messages to other sections of the TCPA, which Plaintiff does not acknowledge or address. *See* Motion to Dismiss 7–8 (collecting authorities).

**Recent In-Circuit Decisions Do Not Address Whether Text Messages Are Covered by the TCPA.** Plaintiff takes Maxwell Leadership to task for failing to cite two recent cases involving text messages and the TCPA. *See* 1927 Motion 18–19 (citing *Bramlett v. RES 360 LLC,* 2026 WL 613023 (N.D. Ga. Mar. 4, 2026); *Wilkerson v. lnsureMe Inc.,* 2026 WL 809589 (M.D. Fla. Mar. 24, 2026)). But in neither case did the defendant raise as an issue whether text messages were covered by the TCPA. *See Bramlett,* 2026 WL 613023, at \*1 ("undisputed" that text messages were telephone calls and only questioned whether they were sent for a prohibited purpose); *Wilkerson,* 2026 WL 809589 at \*3–4 (defendants only challenged direct and vicarious liability for calls and texts at issue). In short, Plaintiff does not identify *any* court in this Circuit following *McLaughlin* that has addressed the issue *and*

18

concluded that text messages are included in private causes of action under either Section 227(b) or Section 227(c)the TCPA.

**Congress Did Not Intend to Include Text Messages When it Enacted the TCPA.** Plaintiff argues that Maxwell Leadership misled the Court by quoting from a Sixth Circuit decision that Congress could not have intended to include text messages in the TCPA because "the first text message was not sent until December 3, 1992, almost a full year *after* the December 20, 1991, enactment of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 625 F. App'x 365, 371 (6th Cir. 2015) (citation omitted and emphasis in original) (quoted in Motion to Dismiss 7).

Plaintiff argues that this was misleading because the Sixth Circuit then concluded that text messages should be treated as a call under the TCPA because "we must defer to the reasonable interpretation of the Act offered by the FCC[.]" *Keating*, 625 F. App'x at 370 (quoted in 1927 Motion 19). But this is to seize the sword by the blade. Text messages were *only* considered calls under the TCPA in *Keating* based on *Chevron* deference, *see Keating*, 625 F. App'x at 370 (applying *Chevron* deference), and when *Chevron* was overruled in *Loper Bright*, it led immediately to the "sea change" in the legal landscape in this Circuit.

This is the sum total of the allegations that Maxwell Leadership misstated the law or misled the Court in arguing that text messages are not

19

included in private causes of action under the TCPA. (It should be noted that Plaintiff did not make similar claims about Maxwell Leadership's description of the parallel Oklahoma law.) In each case, Plaintiff is mistaken. More to the point, each example is a run-of-the-mill disagreement between litigants over the proper interpretation of federal law, the kind of question of law federal courts resolve all the time on motions to dismiss. Even if the Court rejected Maxwell Leadership's legal arguments, which it should not, it should be self-evident that disagreements about the reach of the TCPA are not sanctionable.

**Maxwell Leadership Did Not Misstate the Tort of Intrusion upon Seclusion.** Plaintiff accuses Maxwell Leadership of misstating the Eleventh Circuit's "holding" concerning the tort of inclusion upon seclusion. *See* 1927 Motion 20–23. Plaintiff has conflated two issues—the Eleventh Circuit's description of the tort of inclusion upon seclusion, relying on Restatement (Second) of Torts § 652B, which Maxwell Leadership quoted, and the Eleventh Circuit's holding on Article III standing, which Plaintiff quotes. In *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), the Court held that the allegation of a single unwanted text message was sufficient allegation of "injury" to confer standing and avoid dismissal under Fed. R. Civ. P. 12(b)(1), while stating that "[c]alling someone two or three times, for example, is insufficiently offensive to state a claim under the common-law tort," suggesting that dismissal on the merits would be appropriate under Fed. R. Civ. P. 12(b)(6). *See Drazen*, 74

20

F.4th at 1342–43. As discussed in depth below, Maxwell Leadership has never contested Plaintiff's standing, just that he failed to state a claim.

To set the stage, Maxwell Leadership argued (and Plaintiff agrees, *see* 1927 Motion 23) that Plaintiff is asserting an Oklahoma tort claim for intrusion upon seclusion, and Oklahoma relies upon the Restatement (Second) of Torts § 625B in assessing such claims. *See* Motion to Dismiss 14–15 (collecting authorities). Plaintiff does—and cannot—dispute that Section 625B cited in *Drazen* provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Likewise, Plaintiff cannot dispute that one of the comments to the Restatement cited in *Drazen* provides:

> *There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man*, as the result of conduct to which the reasonable man would strongly object. Thus *there is no liability for* knocking at the plaintiff's door, or *calling him to the telephone on one occasion or even two or three*, to demand payment of a debt. *It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff*, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement (Second) of Torts § 625B, cmt. d (emphasis added). With this background, we turn to *Drazen* in detail.

21

The defendant, GoDaddy, challenged plaintiff's standing under Article III. *See Drazen*, 74 F.4th at 1342. The *Drazen* Court cited Section 625B, and then relied upon Comment d to Section 625B to discuss the tort of intrusion upon seclusion:

> And a single unwanted, illegal text message is not [highly offensive to a reasonable person]. Calling someone two or three times, for example, is insufficiently offensive to state a claim under the common-law tort; "only when the telephone calls are repeated with such persistency and frequency as to amount to a course of hounding the plaintiff" does the intrusion rise to the degree of offensiveness that the common law requires.

*Drazen*, 74 F.4th at 1343 (quoting Restatement (Second) of Torts § 625B, cmt. d) (quoted in Motion to Dismiss 15–16). We read before, and still read, the Eleventh Circuit to rely on Section 625B and the comments to conclude that a few calls would be insufficient "to state a claim under the common-law tort." *Drazen*, 74 F.4th at 1343. That, of course, would mean dismissal is proper under Rule 12(b)(6).

GoDaddy wanted the Eleventh Circuit to go further to find that a call insufficient to state a claim under the common-law tort meant that plaintiff did not assert an injury sufficient to have standing to sue, and that is the portion that Plaintiff quotes:

> Because receiving one text message falls short of that degree of harm, GoDaddy contends that the class members who received only one text message did not suffer an injury that has a close relationship to the injury associated with intrusion upon seclusion. We disagree.

22

*Drazen*, 74 F.4th at 1343 (citation omitted) (quoted in 1927 Motion 21). That meant denial of the motion to dismiss under Rule 12(b)(1). Because Maxwell Leadership is seeking dismissal of Plaintiff's claim on the merits, and not challenging Plaintiff's standing to file suit, this distinction makes all the difference.

Plaintiff's other complaints about *Drazen* are also unavailing. *First*, Plaintiff complains about the failure of the quotation in the Motion to Dismiss to include the reference in Comment d to debt collectors, *see* 1927 Motion 22, but that excision was made by the Eleventh Circuit, not Maxwell Leadership. *Second*, Plaintiff complains that Maxwell Leadership failed to mention that *Drazen* concluded that "Congress appears to have targeted unwanted text messages (as well as unwanted phone messages) with the TCPA," *Drazen*, 74 F.4th at 1343 n.5 (citations omitted) (cited in 1927 Motion 23), but this is simply *dicta* that failed to survive the tsunami of *Loper Bright*.

**Disagreement Whether a Motion to Dismiss Can Be Decided as a Matter of Law Cannot Be Sanctionable.** Plaintiff's final substantive argument in the first 25 pages of his sanctions motion, *see* Judge Johnson Standing Order § 3(C) (refusing to consider arguments that exceed the page limits under the local rules), is that Maxwell Leadership improperly argued

23

that Plaintiff's tort claim of intrusion upon seclusion could be dismissed as a matter of law under Rule 12(b)(6). *See* 1927 Motion 23–25.

Long story short, we continue to believe that Plaintiff's receipt of six unwanted text messages is not highly offensive to a reasonable person as a matter of law under the Restatement quoted above and under the standards articulated in Oklahoma law. *See, e.g., Guilbeau v. Durant H.M.A., LLC*, 533 P.3d 764, 771 (Okla. 2023). Although Plaintiff certainly was free to disagree, he chose not to file any response to the motion to dismiss. It bears repeating that when *pro se* plaintiffs do not respond to motions to dismiss, "the failure to respond to an opposing party's argument constitutes abandonment of that claim and warrants its dismissal." *Boyd v. Wellstar Health Sys., Inc.*, 2025 WL 4696588, *1 n.2 (N.D. Ga. May 2, 2025) (R&R) (cleaned up and citations omitted; collecting cases).

The broader point, of course, is whether a motion to dismiss can be granted as a matter of law, or whether it is an issue that ultimately will need to be decided by a jury, is everyday grist for the mill. Plaintiff certainly does not cite any case in which a dispute whether a Rule 12(b)(6) motion could be decided as a matter of law resulted in sanctions. This certainly should not be the first case to do so.

24

\* \* \*

Plaintiff strenuously disagrees with Maxwell Leadership's arguments for dismissal of this litigation, which remain unaffected by Plaintiff's futile proposed amendments to his complaint, but he chose not to file an opposition to the motion to dismiss or a reply in support of his motion for leave to amend. Plaintiff cannot repackage strongly held, but erroneous, views in untimely and baseless motions for sanctions.

## Conclusion

Defendant Maxwell Leadership, Inc. respectfully requests that the Court deny Plaintiff Anthony Trupia's sanctions motions.

Dated: August 11, 2026

/s/ Peter J. Brann
Peter J. Brann (Pro Hac Vice)
David Swetnam-Burland (Pro Hac Vice)
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566
pbrann@brannlaw.com
dsb@brannlaw.com

25

/s/ Edward A. Bedard
Edward A. Bedard    926148
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th Street, NW
Atlanta, GA 30318
(678) 701-9381
(404) 856-3255 (fax)
ebedard@robbinsfirm.com

*Attorneys for Defendant*
*Maxwell Leadership, Inc.*

26

## Local Rule 7.1(D) Certification

I certify that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

<u>/s/ Peter J. Brann</u>
Peter J. Brann

## Certificate of Service

I certify that, on August 11, 2026, I electronically filed this document and any attachments using the Court's CM/ECF system, which will send notification to all counsel of record. I further certify that I served a copy with all attachments on *pro se* Plaintiff Anthony Trupia by email and U.S. mail, postage prepaid, addressed as follows:

> Anthony Trupia
> 605 SE 21st St.
> Oklahoma City OK 73129
> trupiaar@gmail.com
>
> /s/ Peter J. Brann
> Peter J. Brann

28